# FRANKLIN COUNTY.

### JANUARY TERM, 1840.

PRESENT, Hon. STEPHEN ROYCE,
       "    JACOB COLLAMER,
       "    I. F. REDFIELD,    } *Assistant Justices*
       "    MILO L. BENNETT,

### ROBERT DEAN *v.* NATHAN BAILEY.

Where an officer attached a horse and used the same sufficiently to pay for the keeping, he cannot sustain an action against the attaching creditor, for the pay for such keeping.

THIS was an action of book account, originally commenced before a justice of the peace, and came, by appeal, to the county court. Judgment to account having been rendered, an auditor was appointed, who reported, that the account of the plaintiff consisted of a charge for keeping a mare from some of the first days of June, 1835, to March, 1837, and a colt about eight months; that, in March, 1833, the defendant delivered to the plaintiff, who was then constable of Bakersfield, a writ of attachment in favor of the defendant against one James Smith, and directed the plaintiff to make service of said writ, by attaching several articles of property of Smith, among which was the mare in question; that the plaintiff served the writ according to the directions of the defendant and attached the property designated by the defendant; that the property so attached, including the mare, was thereupon receipted by one Salmon Wires, who, according to the tenor of his receipt, agreed to account for or return the property to the plaintiff, or any other proper offi-

cer holding an execution, by virtue of which it could be legally demanded, when he, the said Wires, should be thereto requested ; that, in June, 1835, Smith left the country, and the receiptor, Wires, returned the mare to the officer, during that month, without any demand on the part of the plaintiff, or any other person, and, from June, 1835, to March, 1837, the plaintiff kept said mare, during which period he used and worked her, without any license from said Smith, or any other person, sufficiently to defray the expenses of her keeping, and without any injury to the mare or detriment to the defendant's lien upon her, acquired by said attachment ; that, in March, 1837, the mare died, the suit on which she was attached being then pending ; that, between June, 1835, and March, 1837, the mare escaped from the pasture of the plaintiff and had a colt, which the plaintiff kept from the last of April, 1836, to March, 1837, when the colt, also, died.

From these facts, the defendant insisted, before the auditor, 1. That he was not indebted to the plantiff, because no demand was made, by the plaintiff, of the receiptor, Wires for the mare, and that the plaintiff was under no obligation and had no right to receive her and charge the defendant for the keeping. 2. That, inasmuch as the plaintiff worked the mare sufficiently to pay for her keeping, he had no right to charge the defendant therefor. The auditor allowed for the keeping of the mare, $50,00, and disallowed the charge for keeping the colt.

The defendant filed exceptions to the report.

The county court decided that, from the facts found by the auditor, there was nothing due to the plaintiff, and rendered a judgment for the defendant ; to which decision the plaintiff excepted.

*H. E. Hubbell,* for defendant.

The only question presented for the consideration of this court, is, whether the plaintiff is entitled to recover for keeping the mare. In considering this, it will be borne in mind, that the plaintiff has no equity in his claim, having worked the mare sufficiently to pay for her keeping. If, then, he can recover at all, it must be by the strict rules of law. The plaintiff, by using the mare, became a wrong doer and thereby

FRANKLIN,
January,
1840.

Dean
v.
Bailey.

rendered himself liable to the party injured. *Lamb* v. *Day et al.,* 8 Vt. R. 407.

He treated the property as his own, and hence, we think it absurd for him to claim pay for keeping it. It seems too much like one's claiming pay of another for keeping his own property. To allow the claim would strongly favor a disregard of duty in officers, which is against sound policy.

*Smith & Aldis,* for plaintiff.

1. The receiptor, Wires, was at liberty, at any time, to return the property to the constable. Such is the nature of his contract.

But even if he were not, he and the attaching officer can agree to have the property delivered back and the receipt given up. This was done in this case. Upon such re-delivery, the constable was bound to keep the property for the attaching creditor, who must pay for the expense of keeping.

2. The constable, in using the property attached, without license from any one was a wrong doer, and thereby became liable to the *owner* for any damages resulting from such use. *Lamb* v. *Day et al.* 8 Vt. R. 407.

He is liable to Smith for the value of the use, during the time he used the mare. If liable to Smith for such use or for damages, he cannot be made liable to the defendant, which would be the case if the use of the horse is to be offset against the expense of keeping. If Smith should sue the plaintiff for such use, or for damages, the plaintiff could not plead in bar that the value of such use or damages had been paid by him to the defendant.

In the suit of *Bailey* v. *Smith,* on which the horse was attached, Smith might have obtained a verdict. In such case, the argument fails, that the use of the horse, by paying for his keeping, and so diminishing the taxable costs, should enure to the defendant's benefit, for Smith would be liable to no costs. The person who seeks to enforce an unjust claim, by law, can hardly insist upon an equity to the use of his opponent's property, to defray the expenses he may incur in such suit. The defendant had no knowledge, or, at least, gave no assent to the use of the horse, by the plaintiff. He, therefore, could not be made liable to Smith. Such an opinion is expressed by the court in 8 Vt. R. 407.

But, even if liable, with the plaintiff, to Smith, still he cannot set up such contingent liability against the plaintiff, until he has paid the money to Smith.

The opinion of the court was delivered by

Collamer, J.—When personal property is attached, it is to be kept, by the officer, at the the expense of the *debtor.* The debtor, if unwilling to incur this expense, must replevy or procure it receipted ; which he is as much bound to do as he is to procure bail, when his body is arrested, if he would avoid prison charges. If the officer afterwards receives an execution, he sells the property and takes his pay for the expense of keeping, out of the money so received, and applies the balance on the execution. Thus the *debtor* pays for the keeping. If the debtor settles the debt with the creditor, so that no execution comes into the officer's hands, on which to make sale, he may sustain an action *against the debtor* for the keeping. This was so decided by this court, in Orange county, in the case of *Jackson* v. *Scribner.* Most clearly, if the debtor does pay the officer, he cannot recover his pay again of the creditor. Here, the officer used the property, without injury, sufficiently to pay for the keeping. But, it is said, that he must not so apply this use, as the officer is liable therefor to the debtor, in trespass. It was decided in the case *Lamb* v.*Day et al,*that for such a use,nothing could be recovered by the debtor, in an action of trespass, but the injury to the property. For the use then, the debtor had a claim, in contract, against the plaintiff, and to this the keeping must apply. The result, therefore, is this, the plaintiff kept Smith's mare for him and used her for the keeping.

Judgment affirmed.